```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
THE TRAVELERS INDEMNITY COMPANY,                            :
                                        Plaintiff,          :
                                                            :     22 Civ. 9900 (LGS)
                -against-                                   :
                                                            :     OPINION & ORDER
TRISURA SPECIALTY INSURANCE                                 :
COMPANY,                                                    :
                                        Defendant.          :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

This case is a coverage dispute between Travelers Indemnity Company ("Travelers") and Trisura Specialty Insurance Company ("Trisura") arising out of a personal injury lawsuit (the "Underlying Action") currently pending in state court. The injury in question occurred at a construction site. Travelers is presently providing a defense to its named insured, the general contractor, and the named insured's wholly owned subsidiary. The owner of the building and the tenant have tendered their defense to Travelers. Travelers filed the present action against Trisura, seeking a declaration that Trisura should defend and indemnify all parties to the Underlying Action. Trisura insured the sub-contractor and its employee, who was injured. The parties have filed cross-motions for summary judgment. For the reasons stated below, summary judgment is granted to Travelers, with one exception, and denied to Trisura, again with one exception.

I.   BACKGROUND

   A. The Parties and the Underlying Action

The following facts are drawn from the parties' submissions and are undisputed.

300 Cadman Plaza West, also known as 1 Pierrepont Plaza, (the "Premises") is a nineteen-story building owned by the City of New York (the "City"). Forest City Pierrepont

Associates ("FCPA") is a tenant of the Premises. On April 11, 2019, FCPA entered into a contract with R.P. Brennan General Contractors and Builders, Inc. ("R.P. Brennan") for "DEMO FOR FLOORS 2-5" of the Premises (the "Prime Contract"). R.P. Brennan in turn entered into a contract (the "Subcontract") with Statewide Demolition Corp. ("Statewide") to perform a "[c]omplete gut demo of floors 2, 3, 4 and 5" on the Premises. The Subcontract required work including the removal of

> [c]eilings, flooring, floors, raised floors and pedestals, walls, partitions, all finishes, furniture, lighting fixtures, plumbing fixtures, bathrooms . . . , furniture, HVAC units, fans, piping and equipment, CRAC units, data wire, racks, servers and equipment, plumbing piping, sprinkler equipment and piping . . . conduits, wiring, duct work, hangars, steel plates, Etc.

During the project on May 16, 2019, an employee of Statewide (the "Claimant") was allegedly injured while "using a crowbar to dislodge and move a steel plate" on the fifth floor of the Premises. Claimant brought the Underlying Action in state court on June 4, 2020, naming R.P. Brennan, Brennan Operating, Inc. (R.P. Brennan's wholly owned subsidiary, hereinafter "Brennan Operating"), the City and FCPA.

Trisura issued a general liability policy to Statewide for the policy period August 24, 2018, to August 24, 2019, (the "Trisura Policy"). Travelers issued a general liability policy to R.P. Brennan for the policy period July 17, 2018, to July 17, 2019 (the "Travelers Policy"). Travelers is presently providing a defense to its insured, R.P. Brennan, and to Brennan Operating.

Travelers tendered the defense and indemnification of R.P. Brennan, Brennan Operating, the City and FCPA in the Underlying Action to Trisura on July 9, 2020. Trisura responded to the tender by a letter dated August 19, 2021, denying coverage under the Trisura Policy (1) to Brennan Operating and FCPA on the basis that they are not additional insureds and (2) to all parties on the basis that Claimant's alleged injury occurred while performing demolition work

and is thus excluded by a provision excluding coverage of bodily injury that results from certain demolition work (the "Demolition Exclusion").

### B. Procedural Background

Travelers commenced this declaratory judgement action against Trisura on November 21, 2022. Travelers seeks a declaration that (1) Trisura is obligated to defend and indemnify R.P. Brennan, Brennan Operating, the City and FCPA in the Underlying Action as additional insureds under the Trisura Policy on a primary, non-contributory basis and (2) Travelers is entitled to a judgment for all defense and indemnity costs incurred on behalf of R.P. Brennan, Brennan Operating, the City and FCPA in the Underlying Action.

After engaging in discovery and settlement negotiations, the parties cross-moved for summary judgment, both arguing that the policies unambiguously support their respective positions. Trisura filed its motion on December 22, 2023, asking the Court to find (1) that the Demolition Exclusion bars all claims on the Trisura Policy arising out of the Underlying Action or (2) that FCPA and Brennan Operating are not additional insureds under the Trisura Policy. Trisura further argues that, should the Court find that Trisura owes a duty to defend to either the City or FCPA, Travelers owes the same duty as a co-insurer with Trisura for these entities. Travelers filed its motion on January 19, 2024, asking the Court to find that the Demolition Exclusion is not applicable, FCPA and Brennan Operating are additional insureds under the Trisura Policy and Trisura owes primary, non-contributory coverage to R.P. Brennan, Brennan Operating, the City and FCPA. Trisura filed a Rule 56.1 Statement on December 22, 2023, to which Travelers responded on January 19, 2024. Travelers did not file its own Rule 56.1 Statement.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[1] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "When both parties have moved for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021).

"When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (New York law); *accord Embraer S.A. v. Dougherty Air Tr., LLC*, 348 F. Supp. 3d 246, 260 (S.D.N.Y. 2018) (New York law). Summary judgment is inappropriate, however, "[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent." *Seiden Assocs., Inc.*, 959 F.2d at 428.

The parties agree that New York law governs this dispute. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law . . . ."). Although the policies at issue do not contain a choice-of-law provision, the parties cite only New York law in their briefs. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133,

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

138 (2d Cir. 2000) (implied consent to application of New York law where the parties' briefs "assumed" that it controlled).

### III. DISCUSSION

Under New York law, "[a]n insurance agreement is subject to principles of contract interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80 (N.Y. 2015). "Determining whether a contract is ambiguous is an issue of law for the courts to decide." *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Mostow v. State Farm Ins. Cos.*, 668 N.E.2d 392, 394 (N.Y. 1996). "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 97 N.E.3d 711, 712-13 (N.Y. 2018).

"Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." *Donohue*, 184 N.E.3d at 867. "[P]rovisions in a contract are not ambiguous merely because the parties interpret them differently . . . ." *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996). "[A] contract is not ambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016).

#### A. The Demolition Exclusion

Summary judgment is granted to Travelers and denied to Trisura on the issue of the applicability of the Demolition Exclusion in the Trisura Policy. Trisura argues that coverage is

barred by the Trisura Policy's exclusion of "bodily injury . . . arising directly or indirectly out of . . . the demolition of any building or structure which has an original ground height in excess of three stories or 36 feet." That argument is rejected because, as explained below, the Demolition Exclusion, unambiguously and on its face, does not bar coverage for injuries sustained while engaged in the destruction of an interior floor of a building. Trisura has not carried its burden of showing that the exclusion applies. *See Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984); *Dish Network Corp.*, 21 F.4th at 212 (New York law) ("An insurer bears the burden of proving that an exclusion applies.").

The meaning of the Demolition Exclusion is unambiguous. "In determining a dispute over insurance coverage, we first look to the language of the policy." *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002); *accord Inc. Vill. of Old Westbury v. Am. Alternative Ins. Corp.*, 710 F. App'x 504, 505 (2d Cir. 2018) (summary order) (New York law). By its terms, the exclusion applies only to "the demolition of any building or structure" at least "three stories or 36 feet" high. The words "demolition" and "any" mean the destruction of an *entire* building or structure. The provision contains no language, such as "in part or in whole" that would modify that express language.

Under New York law, "[c]ourts may refer to the dictionary to determine the 'plain and ordinary meaning' of contract terms." *Dish Network Corp.*, 21 F.4th at 211. The primary definition of "demolish" provided by the Merriam-Webster dictionary is to "tear down, raze," as in "demolish a building," or "to break to pieces." *Demolish*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/demolish [https://perma.cc/ZZ9M-996T]. Likewise, the Oxford English Dictionary's primary definition is, "To pull or knock down (a building or other structure); to reduce to rubble or ruins; (more generally) to break violently into

pieces; to smash, destroy." *Demolish*, Oxford English Dictionary, https://www.oed.com/dictionary/demolish_v (last visited June 5, 2024).  The language of the Demolition Exclusion confirms that these definitions -- relating to the destruction of an entire structure -- apply.  The word "any" reinforces this interpretation.  The first Oxford English Dictionary definition states that, when used with a noun, "any" is "used to refer to *an unspecified member* of a particular class."  *Any*, Oxford English Dictionary (emphasis added), https://www.oed.com/dictionary/any_adj (last visited June 5, 2024).  Here, "any" references a "building or structure."  "Any" does not mean a part of a thing.

The remainder of the Demolition Exclusion confirms this interpretation.  *See Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (New York law) (courts "do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole").  The Trisura Policy's definition of "demolition" is confined to this provision:

> This insurance does not apply to:
> Demolition
> 1. "bodily injury" or "property damage" arising directly or indirectly out of:
>    a. the use, handling or storage of explosive materials;
>    b. the use of a wrecking ball and chain or similar apparatus; or
>    c. the demolition of any building or structure which has an original ground height in excess of three stories or 36 feet, whichever is less; or
> 2. "property damage" to
>    a. any abutting, adjoining, shared or common wall; and
>    b. any building and/or property of which such wall is a part.

Subparts 1(a) and (b) provide context for 1(c).  They discuss activities associated with razing a building, confirming that the word "demolition" in 1(c) similarly refers to razing an entire building or structure.  The height requirement of three stories or 36 feet expressly removes from the Demolition Exclusion the destruction of smaller structures, such as the "[c]eilings, flooring, floors, raised floors and pedestals, walls, partitions, all finishes, furniture, lighting fixtures,

plumbing fixtures, bathrooms . . . , furniture, HVAC units, fans, piping and equipment, CRAC units, data wire, racks, servers and equipment, plumbing piping, sprinkler equipment and piping . . . conduits, wiring, duct work, hangars, steel plates" at issue here.

This interpretation is consistent with New York case law. *See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018) ("[W]here a contract does not define a particular -- and potentially ambiguous -- term, *a body of state law* or an established custom fills in the gaps left by the drafters." (emphasis added)). New York courts have interpreted insurance contracts containing an exclusion for the "demolition of a building or structure" and held that such an "exclusion would apply only where there was a complete tearing down, razing, or destruction of the entire building." *In re Midland Ins. Co.*, 565 N.Y.S.2d 517, 518 (1st Dep't 1991); *see also U.S. Underwriters Ins. Co. v. Manhattan Demolition Co.*, 612 N.Y.S.2d 449, 450 (2d Dep't 1994) (holding that a similar exclusion did not encompass "property damage due to buildings being subject to interior renovation, that is, the removal of nonbearing walls"); *accord Herbert v. Dryden Mut. Ins.*, 54 Misc. 3d 1205(A) (N.Y. Sup. Ct. 2017). The work required in the Subcontract was limited to four lower floors of a nineteen-story building that is still standing. The work was essentially interior renovation, not the partial or total razing of a building.

Trisura argues that the word "demolition" means any destruction of interior fixtures, structures or finishings, and that subpart 1(c) therefore excludes from coverage any destructive activities occurring on the third floor of a building or higher; and since Claimant was injured while working on the fifth floor, his injury is within the scope of the exclusion. This interpretation is unreasonable and rejected because it is untethered to the language of the exclusion -- which bars coverage for injuries arising from "the demolition of any building or structure which has an original ground height in excess of three stories or 36 feet." Trisura's

argument ignores that the word "which" means that the height specification explicitly modifies "building or structure," i.e., which buildings and structures are excluded, not the location of conduct that is excluded. Trisura's interpretation strains the policy language beyond its reasonable meaning and does not render the exclusion ambiguous. *See Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("[C]ourt[s] should not find the contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." (citing *Bethlehem Steel Co. v. Turner Construction Co.*, 141 N.E.2d 590 (N.Y. 1957)).

Trisura urges the Court to consider extrinsic evidence to support its preferred definitions of "demolition," including the New York State Industrial Code and the Occupational Safety and Health Administration. This evidence is improper because "[e]xtrinsic evidence cannot be used to vary the terms of a facially unambiguous contract." *See HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) (New York law); *accord N.Y. Cmty. Bank v. Est. of Paraskevaides*, No. 18 Civ. 3987, 2019 WL 3024703, at *7 (S.D.N.Y. July 11, 2019) (New York law).

Trisura relies on two cases to support its contention that the Demolition Exclusion applies. Both are inapposite. In the first case, the scope of the exclusion was much broader. *See Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 523 (E.D.N.Y. 2020) (excluding coverage for any accident arising out of "any construction, renovation, rehabilitation, demolition, erection, excavation or remedition [sic]"). The second case did not involve interpretation of a demolition exclusion. *See Sirius Am. Ins. Co. v. Burlington Ins. Co.*, 917 N.Y.S.2d 192, 193 (1st Dep't 2011) (the parties disputed not what kind of work constituted

demolition, but whether the policy had been wrongfully procured by the insured misrepresenting the work it intended to undertake).

Based on its unambiguous terms, the Demolition Exclusion does not apply to bar coverage for the incident in the Underlying Action.

### B. Additional Insureds

Travelers' Complaint seeks a declaration that Trisura owes coverage to R.P. Brennan and Brennan Operating (which the Complaint collectively defines as "R.P. Brennan"), FCPA and the City. Trisura does not dispute that it owes coverage to R.P. Brennan and the City as additional insureds. Trisura does dispute that FCPA and Brennan Operating are also entitled to coverage as additional insureds under the Trisura Policy. Travelers seeks summary judgment on that issue. Based on the unambiguous terms of the operative agreements and the evidence in the record, FCPA is an additional insured under the Trisura Policy, and Brennan Operating is not.

A party that is not named an insured or additional insured in a policy is not entitled to coverage. *Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co.*, 774 N.Y.S.2d 11, 13 (1st Dep't 2004); *accord Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co.*, No. 22 Civ. 1590, 2024 WL 1195401, at *7 (S.D.N.Y. Mar. 19, 2024) (New York law). New York law "recognize[s] the right of each insurer to rely upon the *terms of its own contract* with its insured." *State Farm Fire & Cas. Co. v. LiMauro*, 482 N.E.2d 13, 16 (N.Y. 1985) (emphasis added). "When determining whether a third party is an additional insured under an insurance policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself." *77 Water St., Inc. v. JTC Painting & Decorating Corp.*, 50 N.Y.S.3d 471, 475 (2d Dep't 2017); *accord Cincinnati Ins. Co. v. Harleysville Ins. Co.*, 709 F. App'x 71, 74 (2d Cir. 2017) (summary order) (New York law). "[T]he extent of coverage is controlled by the relevant policy

terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage." *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 38 N.Y.S.3d 1, 5 (1st Dep't 2016), *aff'd*, 97 N.E.3d 711 (N.Y. 2018).

Section II of the Trisura Policy dictates "Who Is an Insured." Statewide is the only named insured in the Trisura Policy. The Additional Insured Endorsement amends Section II "to include as an insured the person or organization shown in the Schedule . . . ." The Schedule, rather than identifying additional insureds by name, states "Per Written Contract," without further elaboration or restriction. The Schedule does not require that the written contract naming the additional insured be between the primary insured (Statewide) and the additional insured (FCPA and/or Brennan Operating), in contrast to otherwise similar provisions. *Cf. Gilbane Bldg. Co./TDX Constr. Corp.*, 97 N.E.3d at 712-13 (N.Y. 2018) (denying coverage where the provision stated: "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization *with whom you have agreed* to add as an additional insured by written contract" (emphasis added)); *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.*, 961 N.Y.S.2d 3, 4-5 (1st Dep't 2013) (holding that a property owner was not an additional insured on a subcontractor's insurance since it had no written agreement directly with the subcontractor and the relevant provision in the subcontractor's insurance policy required, "*when you and such . . . organization have agreed* in writing in a contract or agreement that such . . . organization be added as an additional insured on your policy" (emphasis added)).

The parties do not dispute that the Subcontract is a "written contract" relevant to determining who are additional insureds under the Trisura Policy. In the Subcontract (between R.P. Brennan as contractor and Statewide as subcontractor), Statewide agreed to "provide Commercial General Liability insurance" and "name [R.P. Brennan] and Indemnitees as

11

Additional Insureds thereunder." The Subcontract defines "Indemnitee" as "[R.P. Brennan], and all parties [R.P. Brennan] is obligated by contract or otherwise, to indemnify, defend and hold harmless." R.P. Brennan's Prime Contract with FCPA in turn requires R.P. Brennan to "indemnify, defend and hold harmless [FCPA] from any and all loss, claims and liability, including, without limitation, reasonable legal fees and costs, for death, injury or disability of any person . . . caused by or resulting from acts or omissions of [R.P. Brennan], its agents, suppliers or employees in connection with the performance of this Order." Because the Prime Contract requires R.P. Brennan to indemnify FCPA, FCPA is an indemnitee of R.P. Brennan and an additional insured under the Trisura Policy.

Travelers cites no record evidence to support its argument that Brennan Operating is an indemnitee of R.P. Brennan. Travelers merely cites allegations in the Complaint that Brennan Operating is a wholly owned subsidiary of R.P. Brennan, and that R.P. Brennan does business as Brennan Operating. Even if these allegations were supported by evidence, they are insufficient to establish that Brennan Operating is an additional insured, because they do not show that R.P. Brennan "is obligated by contract or otherwise, to indemnify" Brennan Operating.

Partial summary judgment is granted to Travelers and denied to Trisura based on the finding that FCPA is an additional insured under the Trisura Policy. Partial summary judgment is granted to Trisura and denied to Travelers based on the finding that Brennan Operating is not an additional insured under the Trisura Policy. As previously noted, Trisura does not dispute that R.P. Brennan and the City are additional insureds under the Trisura Policy.

### C. Priority of Coverage

The last issue is priority of Travelers' and Trisura's respective coverage obligations to the entities that are insured under both the Travelers Policy and the Trisura Policy -- R.P. Brennan,

the City and FCPA. Travelers seeks summary judgment finding that Travelers' coverage is excess of Trisura's coverage. Trisura does not dispute that the coverage it owes to R.P. Brennan is on a primary, non-contributory basis. As to the City and FCPA, Trisura seeks summary judgment finding that Travelers owes primary, contributory coverage as co-insurer with Trisura. Based on the unambiguous language of the respective policies, (1) Trisura's coverage of the City and FCPA is primary, and (2) Travelers' coverage of the City and FCPA is excess to Trisura's.

The Trisura Policy, pursuant to its unambiguous terms, provides primary coverage to FCPA and the City. Section III of the Trisura Policy, in the "Other Insurance" subsection, states, "This insurance is primary except when Paragraph b. below applies." The exceptions in Paragraph (b) are inapplicable here. The closest possibility is Paragraph (b)(1)(b), which states that "[t]his insurance is excess over . . . [a]ny other *primary* insurance available to you covering liability for damages arising out of the premises or operations . . . for which you have been added as an additional insured." (Emphasis added). But the Travelers Policy is not "primary insurance" as to the City and FCPA. The Travelers Policy provides the City and FCPA only excess coverage.

The Travelers Policy contains a Blanket Additional Insured (Contractors) Endorsement which states that the policy is "amended to include any person or organization that you agree in a 'written contract requiring insurance' to include as an additional insured." Travelers does not dispute that the City and FCPA are additional insureds under the Travelers Policy. The Endorsement further prescribes when Travelers' coverage of additional insureds is primary and when it is excess:

> [1] The insurance provided to the additional insured by this endorsement is excess over any valid and collectible "other insurance," whether primary, excess, contingent or on any other basis, that is available to the additional insured for a loss we cover under this endorsement. [2] However, if the "written contract

13

> requiring insurance" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to "other insurance" available to the additional insured which covers that person or organization as a named insured for such loss, and we will not share with that "other insurance." [3] But *the insurance provided to the additional insured by this endorsement still is excess over any valid and collectible "other insurance," whether primary, excess, contingent or on any other basis, that is available to the additional insured when that person or organization is an <u>additional insured</u> under such "other insurance."*

(Emphasis added). The third italicized sentence above is operative as to the City and FCPA. Applied to these facts, this third sentence provides that Travelers' coverage is excess over Trisura's coverage (the "other insurance") as to "any person or organization [that] is an additional insured under such 'other insurance.'" The City and FCPA are additional insureds under the Trisura Policy as explained in the immediately preceding section. Therefore, Travelers' coverage of FCPA and the City is excess over Trisura's coverage.

Trisura argues that Travelers' coverage of FCPA and the City is primary and contributory with Trisura's coverage. Trisura relies on the second sentence in the provision quoted above, which states that the Travelers coverage is primary "if the 'written contract requiring insurance'" requires it. This argument fails because it misreads the Travelers Policy, which says: "this insurance is primary to 'other insurance' available to the additional insured which covers that person or organization as a *named insured*." Neither FCPA nor the City is a named insured on the Trisura policy.

Accordingly, Trisura's coverage of FCPA and the City is primary, and Travelers' coverage is excess to Trisura's. Summary judgement on this issue is granted to Travelers and denied to Trisura.

14

IV. **CONCLUSION**

The parties' cross motions for summary judgment are decided as follows: (1) regarding the Demolition Exclusion in the Trisura Policy, Travelers' motion for summary judgment on this issue is **GRANTED** to Travelers and **DENIED** to Trisura because the exclusion does not apply; (2) regarding Trisura's coverage of additional insureds, summary judgment on this issue is **GRANTED IN PART** and **DENIED IN PART** to each party because the City and FCPA are additional insureds under the Trisura Policy, and Brennan Operating is not; (3) regarding the priority of coverage, summary judgment on this issue is **GRANTED** to Travelers and **DENIED** to Trisura because Trisura's coverage of R.P. Brennan, FCPA and the City is primary, and Travelers' coverage is excess.

By **June 14, 2024**, the parties shall file a joint letter proposing next steps consistent with this decision.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 39 and 43.

Dated: June 7, 2024
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**